Exhibit A

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>Address:    7325 S. Potomac St.<br>              Centennial, CO  80112<br>Phone:      303-649-6355 | |
| **Plaintiff:**  AUSTIN BENSON<br>v.<br>**Defendant:** ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY | |
| Attorneys for Plaintiff:<br>Scott P. Landry, #21934<br>Landry Law, P.C.<br>9896 Rosemont Avenue, Suite 104<br>Lone Tree, CO  80124<br>Telephone:    (720) 583-2143<br>Facsimile:    (720) 583-2483<br>slandry@landrylawpc.com | ▲COURT USE ONLY▲<br><br>Case Number:<br><br>Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Austin Benson, through his attorneys, Landry Law, P.C., hereby submits his Complaint and Jury Demand and alleges as follows:

### GENERAL ALLEGATIONS

1. Plaintiff Austin Benson, is a resident of the County of Arapahoe, State of Colorado.

2. Defendant Allstate Fire and Casualty Insurance Company (hereinafter referred to as "Allstate") is an insurance company authorized and licensed to do business in the state of Colorado, and transact business in the County of Arapahoe, Colorado.

3. Defendant Allstate is a foreign corporation having its principal place of business in Northbrook, Illinois.

4. Venue is proper in this Court pursuant to C.R.C.P. 98 because Plaintiff resides in the County of Arapahoe and Defendant Allstate transacts business in the County of Arapahoe, Colorado, and because venue is hereby designated as the County of Arapahoe, Colorado.

5. On April 2, 2015, Plaintiff was driving a vehicle owned by his friend Jocelyn Thomas. Jocelyn Thomas was in the passenger seat of the vehicle. They were travelling westbound on Highway 15, at mile marker 104 in Clarke County, Nevada, when Jocelyn Thomas grabbed the steering wheel, causing the vehicle to leave the highway and roll over.

6. The conduct of Jocelyn Thomas in grabbing the steering wheel, and causing the vehicle to exit the roadway and roll over, constituted negligence.

7. Jocelyn Thomas was insured by a liability policy issued by Allstate, policy number 92078179.

8. Plaintiff, Austin Benson was insured by a liability policy issued by Allstate, policy number 964207585, that included underinsured motorist coverage.

9. The injuries, damages, and losses incurred by Plaintiff as a direct and proximate result of the negligence of Jocelyn Thomas include, without limitation, the following:

   a. Spinal injuries including: 1) Lumbar: SI joint sprain/lumbar strain, lower lumbar facet arthropathy, bilateral and symmetrical erosive/inflammatory sacroillitis, and aberrant posturing consisting of a mildly hypolordotic attitude 2) Cervical: C3/4: mild left worse than right uncovertebral hyperostosis and a minimal diffuse bulge. There is impression on the ventral thecal sac and neuroforaminal stenosis. C4/5: There is mild right and minimal left uncovertebral hyperostosis. There is minimal diffuse bulge. C5/6: There is mild bilateral uncovertebral hyperostosis.

   b. Blunt trauma to the head and neck, Post-traumatic headaches, postconcussive symptomology;

   c. Left shoulder: Small delaminating tear of the distal supraspinatus tendon with likely extension to the bursal surface. Left Shoulder sprain.

   d. Resulting opiate dependence;

   e. Withdrawal from opiate dependency;

   f. Physical and mental pain and suffering, past and future;

   g. Loss of enjoyment of life and impairment of quality of life, past and future;

   h. Emotional distress, past and future;

   i. Permanent physical impairment;

   j. Loss of earnings and earning capacity; and

    k. Medical, hospital, therapy, and related expenses, past and future.

  10. Plaintiff's liability policy that was issued by Allstate, policy number 964207585, provided underinsured motorist coverage for the injuries, damages, and losses incurred by Plaintiff as a result of the motor vehicle crash.

## FIRST CLAIM FOR RELIEF
(C.R.S. §§ 10-3-1115 and 1116 - Unlawful Delay and Refusal to Pay
Underinsured Motorist Coverage Benefits)

  11. The preceding allegations contained in this Complaint are incorporated herein by this reference as if again set forth verbatim.

  12. C.R.S. §10-3-1115 provides that, a person or entity engaged in the business of insurance shall not unreasonably delay or deny payment for a claim for benefits owed to any first party claimant.

  13. Plaintiff constitutes a "first party claimant" with respect to underinsured motorist benefits due him as a consequence of his injuries incurred in the collision of April 2, 2015.

  14. On May 7, 2015, Allstate adjuster, Charlene Djurdjevic, acknowledged receipt of Plaintiff's UIM Claim.

  15. On May 18, 2015, undersigned counsel requested Allstate provide information on what it had done to investigate the claim.

  16. On May 29, 2015, Allstate adjuster, Charlene Djurdjevic, responded to the undersigned stating it would evaluate the claim but that its investigation showed 50/50 liability which would bar recovery in Colorado.

  17. On May 29, 2015, undersigned counsel requested Allstate to provide information obtained during its investigation that led to its 50/50 liability determination.

  18. On July 2, 2015, Allstate adjuster, Charlene Djurdjevic, informed undersigned counsel that Allstate's medical and or wage investigation was continuing.

  19. On July 13, 2015, Allstate adjuster, Charlene Djurdjevic, informed undersigned counsel that the tortfeasor's liability carrier, also Allstate, had accepted 50% of the liability and that undersigned counsel was filing a UIM claim based upon that.  Ms. Djurdjevic stated she believed there was UIM exposure and she was willing to evaluate the whole claim once she received bills and records.

  20. On July 13, 2015, Allstate adjuster, Charlene Djurdjevic, informed undersigned counsel in a telephone conversation, that the extent of her liability investigation was to speak with the tortfeasor's Allstate adjuster from Nevada.  On July 13, 2015, undersigned counsel memorialized that conversation in a letter to Allstate.

21. Upon information and belief, as of July 13, 2015, the tortfeasor's Allstate adjuster from Nevada had never even interviewed their insured, who was the cause of the motor vehicle crash.

22. On July 15, 2015, Allstate adjuster, Charlene Djurdjevic, sent a letter to undersigned counsel to clarify that she had a due diligence to complete an independent investigation. She informed that the liability and coverage investigation were already completed when she received the file and after reviewing the information it appeared everything was proper. She confirmed that she did call the other adjuster to confirm their liability decision to determine if a UM or UIM exposure existed.

23. On July 24, 2015, the undersigned provided the Allstate liability adjuster and the Allstate UIM adjuster with transcripts of a recorded interview of Allstate's insured, Jocelyn Thomas, where she admits she was 100% at fault for causing the motor vehicle crash.

24. On July 30, 2015, Allstate informed that its liability investigation was continuing and acknowledged receipt of the July 24, 2015 correspondence from the undersigned and was reviewing it.

25. On August 24, 2015, Allstate adjuster, Charlene Djurdjevic, informed she was in the process of completing the liability investigation.

26. On September 11, 2015, Allstate adjuster, Charlene Djurdjevic, informed, that the liability decision was complete and Allstate had found Plaintiff "zero at fault" for the motor vehicle crash.

27. Plaintiff continued to treat for his injuries through February 2016 and received a final narrative report from his coordinating medical provider on or about April 27, 2016.

28. On May 24, 2016, Plaintiff made a settlement demand to the Ms. Thomas' insurer, Allstate.

29. On June 23, 2016, Plaintiff settled with the Ms. Thomas for her Allstate policy limits of $50,000.00.

30. On June 29, 2016, Allstate adjuster, Patricia Dominski, relayed Allstate's permission to settle with Ms. Thomas for her Allstate policy limits of $50,000.00.

31. On June 30, 2016, undersigned counsel provided Plaintiff's relevant medical records and documents to Allstate adjuster, Patricia Dominski, and demanded Plaintiff's Underinsured Motorist Benefits, **Exhibit 1**.

32. On July 26, 2016, Allstate adjuster, Patricia Dominski, informed that Allstate was in the process of evaluation the claim and would respond once the evaluation was completed.

33. On August 22, 2016, Allstate adjuster, Patricia Dominski, informed that Allstate was in the process of evaluating the claim and would contact the undersigned on completed.

34. On September 1, 2016, Allstate adjuster, Patricia Dominski, informed in a letter to the undersigned counsel, that of the $57,970.21 of medical bills submitted she only considered $40,170.00, as she did not relate a visit to the emergency room on January 28, 2016. Of those $40,170.00 in bills she determined that only $25,501.00 were reasonable and customary. In addition, she deducted $10,000.00 for Mr. Benson's medpay benefits. Ms. Dominski referenced her determination of reasonable and customary is based upon what the medical industry supports as well as Mitchell Decision Point (MDP) software, which was one of the tools Allstate utilizes along with Colossus. Ms. Dominski requested additional information regarding the wage loss claim. She stated that she believed that Mr. Benson had been adequately compensated. But in light of the nature of the accident and all of the details of the loss, Allstate offered $10,000.00, **Exhibit 2**.

35. On September 20, 2016, Allstate adjuster, Patricia Dominski, requested a response to Allstate's $10,000.00 settlement offer.

36. On October 3, 2016, in a letter to Allstate adjuster, Patricia Dominski, undersigned counsel explained the emergency room visit of January 2016 and requested a detailed explanation of how it was determined that Mr. Benson's UIM Benefits only total $10,000.00, **Exhibit 3**.

37. On October 18, 2016, Allstate adjuster, Patricia Dominski, informed that Allstate was reviewing counsel's October 3, 2016 correspondence and would respond timely.

38. On November 2, 2016, Allstate adjuster, Patricia Dominski, sent a letter to undersigned counsel, making generalized statements about Allstate's evaluation, but did not explain the reasons for Allstate's evaluation, **Exhibit 4**.

39. On November 15, 2016, Allstate adjuster, Mikaela Colvin, requested a response to Allstate's $10,000.00 offer.

40. On November 28, 2016, the undersigned counsel again requested in a letter to Allstate adjusters, Nicole Walling and Patricia Dominski, that Allstate explain their decision that Mr. Benson's UIM Benefits only total $10,000.00, **Exhibit 5.**

41. On December 13, 2016, Allstate adjuster, Mikaela Colvin, informed that Allstate was in the process of drafting a response to a letter sent to it on a prior date.

42. On December 19, 2016, undersigned counsel, in a letter to Allstate adjusters, Mikaela Colvin and Nicole Walling, again requested that Allstate explain their decision that Mr. Benson's UIM Benefits only total $10,000.00, **Exhibit 6**.

43. On December 20, 2016, Kurt Henkel, Esq. stated that Allstate had asked him to look at this matter and provide a further response. Mr. Henkel requested additional time to respond

to the undersigned's letter to Allstate dated December 19, 2016.  Undersigned counsel had no objection to the requested extension.

44.     On January 4, 2017, Allstate adjuster, Mikaela Colvin, informed Allstate was in the process of drafting a response to a letter sent to it on a prior date.

45.     On January 4, 2017, Kurt Henkel, Esq., sent an e-mail to undersigned counsel responding to some of the questions in the undersigned counsel's letter of December 19, 2016.  He stated that in light of the Calderon case, Allstate was offering an additional $10,000.00 to remove the original medpay setoff taken by Allstate in their offer of September 1, 2016.  Mr. Henkel also requested additional wage loss information from Plaintiff, and suggested that it might be helpful if Mr. Benson underwent an IME and/or an examination under oath, **Exhibit 7**.

46.     On February 17, 2017, in a letter to Allstate adjusters, Mikaela Colvin and Nicole Waring, in care of Kurt Henkel, Esq., undersigned counsel noted that he had been asking Allstate to explain their decision that Mr. Benson's UIM Benefits only total $10,000.00.   Undersigned counsel reiterated previous questions posed to Allstate, and asked Allstate to explain why it had taken more than 19 months after receiving Plaintiff's demand, to suggest that a medical examination and examination under oath "might be helpful?"  Undersigned counsel also explained that Mr. Benson did not have the requested wage loss information, and inquired as to why Allstate had not requested releases from Plaintiff to conduct their own investigation, **Exhibit 8**.

47.     On February 23, 2017, in a letter to Allstate adjusters, Mikaela Colvin and Nicole Waring, in care of Kurt Henkel, Esq., undersigned counsel requested that Allstate provide the contact information for the current adjuster handling Plaintiff's claim.

48.     Allstate did not respond to the correspondence sent to it on February 17, 2017 and February 23, 2017.

49.     Allstate's failure and refusal to pay the underinsured motorist coverage claim submitted by Plaintiff constitutes unreasonable delay and denial of payment of the underinsured motorist benefits due Plaintiff.

50.     Allstate's failure and refusal to explain the basis of their valuation of Plaintiff's underinsured motorist benefits is a violation of its duty of good faith and fair dealing.

51.     Allstate's failure and refusal to explain the basis of their valuation of Plaintiff's underinsured motorist benefits is a violation of Colorado law and regulations.

52.     Allstate's pattern of conduct of refusal to pay underinsured motorist coverage benefits to which Plaintiff is entitled by contract and its unreasonable delay in paying those benefits has continued to the date of filing this Complaint and is expected to continue until and unless judgment enters against Allstate.

53. C.R.S. §10-3-1116 provides that unreasonable delay or denial of benefits, such as the underinsured motorist benefits here at issue, a claimant for such benefits shall be entitled to recover reasonable attorneys' fees, court costs, and "two times the covered benefit".

54. In this case, the underinsured motorist coverage limits of $100,000.00 set forth in the subject policy of insurance issued by Allstate constitutes that "covered benefit".

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment on Contract of Insurance for Underinsured Motorist Benefits)

55. The preceding allegations of this Complaint are incorporated herein by this reference as if again set forth verbatim.

56. Jocelyn Thomas, the owner of the vehicle and the passenger, who caused the motor vehicle crash of April 2, 2015, had insurance providing liability coverage of $50,000.00 per person.

57. Plaintiff's claims against Jocelyn Thomas were settled for the limits of that liability coverage of $50,000.00, by virtue of a release executed by Plaintiff on July 20, 2016.

58. Plaintiff's claims against Jocelyn Thomas were settled with the consent of Allstate.

59. The subject policy of insurance issued by Allstate provides underinsured motorist coverage for Plaintiff with limits of $100,000.00 per person.

60. Plaintiff is entitled, pursuant to the contract terms of the subject insurance policy issued by Allstate, to $100,000.00 in underinsured motorist coverage from Allstate for his injuries, damages, and losses incurred as a consequence of the subject motor vehicle crash and he is entitled to declaratory relief to that effect pursuant to C.R.C.P. 57.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract of Insurance)

61. The preceding allegations of this Complaint are incorporated herein by this reference as if again set forth verbatim.

62. Allstate has failed and refused to pay Plaintiff $100,000 in underinsured motorist coverage benefits as required by the terms of the subject insurance policies.

63. Allstate's failure and refusal to pay the underinsured motorist coverage claim submitted by Plaintiff constitutes unreasonable delay and denial of payment of the underinsured motorist benefits due Plaintiff.

64. Allstate's failure and refusal to explain the basis of their valuation of Plaintiff's underinsured motorist benefits is a violation of its duty of good faith and fair dealing.

65. Allstate's failure and refusal to explain the basis of their valuation of Plaintiff's underinsured motorist benefits is a violation of Colorado law and regulations.

66. Allstate's pattern of conduct of refusal to pay underinsured motorist coverage benefits to which Plaintiff is entitled by contract and its unreasonable delay in paying those benefits has continued to the date of filing this Complaint and is expected to continue until and unless judgment enters against Allstate.

67. Allstate's conduct, as described herein, constitutes a breach of contract.

**WHEREFORE**, Plaintiff prays for judgment against Allstate as follows:

(a) Declaratory judgment pursuant to C.R.C.P. 57 that Allstate is obligated to pay Plaintiff $100,000.00 in underinsured motorist coverage benefits;

(b) Damages for breach of contract of up to $100,000.00 in underinsured motorist coverage benefits due under the subject policy of insurance issued by Allstate as compensation for Plaintiff's injuries, damages, and losses incurred in the collision of April 2, 2015;

(c) An additional $200,000.00 for Allstate's unreasonable delay or denial of covered benefit as provided by C.R.S. §10-3-1116;

(d) Reasonable costs and attorneys' fees incurred as a result of Allstate's unreasonable delay or denial of covered benefit as provided by C.R.S. §§10-3-1115 & 10-3-1116;

(e) Costs, expert witness fees, interest as provided by law, and such other and further relief as the Court deems appropriate.

**PLAINTIFF HEREBY DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 1st day of March, 2017.

Respectfully submitted,

LANDRY LAW, P.C.

SIGNATURE ON FILE WITH LANDRY LAW, P.C.

By: */s/ Scott P. Landry*
Scott P. Landry, #21934
Attorneys for Plaintiff

Plaintiffs address:
14032 E. Tufts Drive., #214
Aurora, CO  80015

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>Court Address:<br>7325 S. Potomac St.,<br>Centennial, Colorado 80109<br><br>**Plaintiff:**<br>Austin Benson<br>**v.**<br>**Defendant:**<br>Allstate Fire and Casualty Insurance Company | DATE FILED: March 9, 2017 9:38 AM<br>FILING ID: 3FCBBFFB4D834<br>▲ COURT USE ONLY ▲<br>CASE NUMBER: 2017CV30491<br><br>Case Number:<br><br>Div.:      Ctrm.: |

## RETURN OF SERVICE

STATE OF COLORADO    )
                     ) ss
COUNTY OF DOUGLAS    )

I, Kevin Williams, do hereby certify that I served a true and correct copy of this Summons and Complaint and Jury Demand and District Court Civil Cover Sheet and Delay Reduction Order on Allstate Fire and Casualty Insurance Company, in Arapahoe County, at 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado 80112, at 12:00 p.m. on March 8, 2017, by personally handing the same to Alex Reed, of The Corporation Company, Registered Agent.

✓ I am over the age of eighteen (18) and am not interested in, nor a party to this case.

Signed under oath before me on 3/8/17.

_Kevin Williams_
Affiant
Private Process Server

SUBSCRIBED AND SWORN TO before me on this 8th day of March, 2017, by Kevin Williams.

Witness my hand and official seal.

_[signature]_
Notary Public

1001-522