IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:17-cv-00866-KMT

AUSTIN BENSON

      Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY

      Defendant.

---

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

The Defendant, Allstate Fire and Casualty Insurance Company ("Allstate"), through its attorneys, Tucker Holmes, P.C., respectfully submits the following Response to Plaintiff's Motion for Summary Judgment and in support thereof, states as follows:

## I.      INTRODUCTION

Allstate provides a computer tool, Mitchell Decision Point ("MDP"), to assist its adjusters in evaluating certain components of underinsured motorist ("UIM") claims. MDP has a variety of functions and reports for adjusters to consider. One of MDP's functions is to generate data to assist in the analysis of whether submitted medical bills are reasonable. The amount generated by MDP is based on a government database comprised of Medicare reimbursement rates for certain providers or facilities, in specific regions. The MDP program utilizes 200% of the Medicare rates for use in comparison with amounts billed to medical services provided to the insured. In other words, the MDP amount essentially builds in 100% profit as compared to the

approved Medicare reimbursement amounts. Most importantly, Allstate's adjusters are <u>not</u> <u>required</u> to apply the reimbursement rates provided by MDP. Rather, adjusters also consider a number of other factors unique to each individual claim and other relevant information in reaching their claim valuation.

Plaintiff's motion must be denied for a number of reasons. First, the motion should be denied because it raises factual questions related to "reasonableness" in regard to the use of MDP that cannot be adjudicated through a motion for summary judgment. Though arguing that it is unknown as to how MDP determines the reasonable value of medical services, Plaintiff's current attorneys of record, Levy Law, previously filed motions for summary judgment in at least two other cases which raised essentially the same arguments. Both of the motions Levy Law filed in those other cases were premised on their knowledge that MDP utilizes 200% of Medicare rates. However, more to the point here, how MDP determines reasonable value was also testified to by an Allstate claims supervisor <u>in the current case</u>. And, in both prior cases, those courts rejected the arguments of Plaintiff's counsel and denied their motions, refusing to find that the use of MDP in the adjusting process was unreasonable as a matter of law. *See*, *Grabow v. Allstate Fire and Casualty Ins. Co.*, Case No. 18cv32166 (Denver County Dist. Ct., Feb. 13, 2019) (denied plaintiff's motion for summary judgment which sought a determination that Allstate's use of MDP was unreasonable and reasoned that it is a factual determination for the jury) and *Rooney v. Allstate Fire and Casualty Ins. Co.*, Case No. 17-cv-03132-STV (Dist. Colo. April 29, 2019) (denied plaintiff's motion for summary judgment and found it is not "*per se* unreasonable for an insurance company to consider *twice* the value of Medicare rates as *one factor* in evaluating the reasonableness of the charged expenses.") (*See*, orders, **Exhibit A**).

Second, Plaintiff's motion fails to disclose to the Court important underlying facts of this case and provides an inaccurate and incomplete description of MDP and how Allstate adjusts its claims. Specifically, the evaluating adjuster testified that she, in fact, departed from the amount generated by MDP in evaluating Plaintiff's claim.

Third, Plaintiff's motion is premised on an ill-conceived argument that no matter what amount a medical provider bills for a service, it is reasonable as a matter of law. This argument ignores the fact that Plaintiff bears the burden of proof in establishing that the amounts billed are reasonable.

Fourth, Plaintiff fails to cite to key language in the insurance policy which calls for a process by which both sides will attempt to reach a mutually agreed upon amount to resolve the claim prior to seeking court intervention. This is the exact process that Allstate adhered to in this case.

Fifth, Plaintiff's motion should be denied because he is also asking the Court for a momentous change in Colorado claim adjusting standards without justification. Plaintiff seeks a brand new, court-made standard that would preclude any consideration, during claims adjusting, of information that may be deemed inadmissible under the collateral source rule *or* other rules of evidence. In essence, Plaintiff is trying to transform the claims adjustment process in Colorado into a process in which the insurance company would somehow need to apply the rules of evidence to the adjusting process, assessing the admissibility of all facts before taking them into account in the adjusting process. There is no Colorado law which requires a UIM insurer's pre-litigation investigative process be governed by the collateral source rule or other rules of

evidence. The Court should reject Plaintiff's attempt to superimpose evidentiary standards on the claims adjusting process.

Sixth, Plaintiff seeks an unduly expansive definition of "collateral source." A collateral source pertains to a specific payment to a specific plaintiff. In the current case, none of Plaintiff's treatment was covered by Medicare. MDP also did not rely on any of the amounts paid for the medial treatment but rather utilized 200% of the Medicare rate to establish a reasonable value for the medical services provided.

Seventh, Plaintiff mischaracterizes many of his purported undisputed facts in regard to the evaluation of the claim. The actual facts demonstrate that there is a reasonable basis to support the evaluation. At a minimum, as recognized by *Rooney* and *Grabow*, genuine factual issues exist in regard to the overall evaluation and summary judgment must be denied.

Last, as pointed out by Plaintiff, Plaintiff is **now** "only seeking damages for his condition as of the date the demand package was sent to Allstate [(June 30, 2016)]." (See, Doc. No. 84, p. 4). This was not Plaintiff's position during claim handling and represents a tactical, procedural and evidentiary contortion designed to minimize destruction of Plaintiff's credibility (and that of his counsel) owing to his concealment of two post-litigation accidents that caused him significant overlapping injuries. Some of Plaintiff's Motion focuses on Allstate's handling of his claim for permanent impairment. However, Plaintiff's current position that he seeks no damages after the date of his demand package, constitutes an express abandonment of any claim for permanent damages. Plaintiff's Motion does not even attempt to address the logical mess such a radical maneuver will have upon any analysis of the reasonableness of Allstate's pre-litigation claim handling.

## II.   RESPONSE TO PLAINTIFF'S PROPOSED UNDISPUTED FACTS

Allstate does not dispute the following facts: 1; 2; 3; 7; 8; 9; 11; 15; 16; 18; 19; and 20. Allstate's responses to the following facts are numbered according to the number assigned by Plaintiff.

4.      Allstate never determined that Plaintiff was entirely at fault in causing the accident. Its initial determination was that Plaintiff was 50% at fault. When Allstate informed Plaintiff that he was 50% at fault, Allstate informed him that its investigation was ongoing and they were willing to consider additional information. (*See*, July 15, 2015 correspondence, **Exhibit B**).

5.      Plaintiff misrepresents this fact. The evidence does not show that it is Allstate's policy that a recorded statement is required before determining liability. Plaintiff did not take a Fed.R.Civ.P. 30(b)(6) deposition of an Allstate representative. Nycole Walling testified that ideally, it is good for a claim handler to speak with the insured when they first receive a file. In determining liability, she also testified that she would like a recorded statement of the insured. These are her preferences and she never said that it was Allstate's policy. Pete Miller also did not testify that this is Allstate's policy. Also, Mr. Miller was an evaluation consultant and not Ms. Dominski's immediate supervisor.

6.      Plaintiff refers to the wrong date. Allstate changed its liability decision on September 11, 2015.

10.     Plaintiff misrepresents Ms. Dominski's testimony. She testified that there were other adjustments aside from the emergency room bill. MDP recommended $19,679 and she allowed $25,167 in medical bills for her evaluation. (*See*, pg. 120, ln. 2-21, **Exhibit C**).

12.     Ms. Dominski did not testify to this. She specifically said that she relies on MDP to help her determine what is reasonable and customary in Nevada. She also commented on the fact that $15,000 for imaging was unreasonable and did mention that no one pays that amount. She never said that the amount paid is what she bases her opinion on regarding the reasonableness of medical treatment. (*See,* pg. 103, ln. 3-23, Plaintiff's **Exhibit 3**).

13.     Allstate admits that Plaintiff sent the referenced correspondence. However, and interestingly, Plaintiff takes issue with the fact that Ms. Dominski is not a medical doctor while at the same time Plaintiff's counsel, who is also not a doctor, believes he can render medical opinions. Plaintiff never provided any opinion from a medical provider showing that the January 2016 ER visit was related to the accident or a result of pain medication withdrawal.[1] Plaintiff's counsel also told Ms. Dominski that he would provide additional documentation showing that this visit was related to the accident but he failed to do so. (*See*, pg. 60, ln. 8 – pg. 61, ln. 22, **Exhibit C**).

14.     First, Plaintiff bears the burden of proving that the January 2016 ER visit was accident related. There is not a medical opinion stating that the visit is related. It is not Allstate's responsibility to obtain a medical opinion to prove Plaintiff's claim. Also, Mr. Miller testified that he was not certain of all the discussions between Ms. Dominski and Plaintiff's counsel but felt that a second medical opinion could have been an option. Mr. Miller simply expressed his opinion in that he would have obtained a second opinion. There is no evidence that retaining a second opinion was Allstate's policy. At that time settlement negotiations were ongoing and Ms.

---

[1] Also, Plaintiff's expert disclosures do not contain any expert opinions relating the January 2016 ER visit to the accident or medication withdrawal.

Dominski did not feel that an independent medical evaluation was necessary at that point. (*See*, pg. 108, ln. 16 – pg. 109, ln. 6, **Exhibit C**).

17.     Ms. Dominki's evaluation was based on her overall analysis of all the medical records. In regard to the head injury, Ms. Dominski evaluated it as treating up to one month. (*See*, pg. 140, ln. 21- pg. 141, ln. 8). Dr. Hall's records documented improvement by the May 11, 2015 visit and by the June 3, 2015 visit there was no mention of cognitive symptoms. (*See*, Dr. Hall records, **Exhibit D**). Plaintiff also had a pre-existing history of chronic headaches. (*See*, pg. 141, ln. 5-8). Ms. Dominski did not include any damages for a permanent injury based on her review of the medical records. (*See*, pg. 173, ln. 13-19, **Exhibit C**). Also, Plaintiff was noncompliant with his treatment and abruptly stopped which supports Ms. Dominski's opinion that Plaintiff's symptoms were not ongoing. (*See*, Dr. Woods February 8, 2016 letter, **Exhibit E**). Even if it is argued that Ms. Dominski entered incorrect information into Colossus, she evaluated the claim at a higher amount than Colossus recommended.[2] (*See*, pg. 112, ln. 16-22, **Exhibit C**).

21.     See response to number 17.

22.     Mr. Miller testified that a second medical opinion is an option as well as seeking clarification from a doctor if there are questions about the doctor's opinion. There is no evidence that Allstate absolutely had to obtain a second medical opinion and there is no evidence that Allstate's policies required one. (*See,* pg. 48, ln. 1 – pg. 49, ln. 23, Plaintiff's **Exhibit 8**).

---

[2] Colossus is another tool an adjuster can use during an evaluation to assist with general damages. (*See*, pg. 170, ln. 10-16, **Exhibit B**).

### III.    STANDARD OF REVIEW

"[S]ummary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." *O'Neill v. Runyon*, 898 F.Supp. 777, 780 (D. Colo. 1995). To defeat the opposing party's motion for summary judgment, the nonmoving party need only identify specific "facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party." *Breaux v. American Fam. Mut. Ins. Co.*, 387 F. Supp. 2d 1154, 1161 (D. Colo. 2005). In determining whether there is a genuine issue for trial, "[t]he factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." (*Id.*)

Plaintiff references an ADR award in their standard of review section and argues that the Court should accept the factual findings of the ADR as true. (*See*, Doc. 84, p. 8). There is no ADR award or factual findings of an ADR in this case.

### IV.    LEGAL ARGUMENT

### A. **Plaintiff's Motion Is Based on an Incorrect Understanding of How Allstate Evaluates Claims, Including Its Use of MDP.**

1. Contrary to Plaintiff's argument, Allstate did disclose information about how MDP works.

During the course of discovery, Plaintiff deposed Ms. Dominski's supervisor, Nycole Walling.  Ms. Dominski was the primary handler of Plaintiff's UIM claim and the one who evaluated the claim. (*See,* response to undisputed fact no. 5). During her deposition she was asked about MDP and how it arrives at the reasonable value of a medical service. In response to

this question she testified that it is based on 200% of Medicare. (*See*, pg. 114, ln. 8-20, **Exhibit G**).

Furthermore, Plaintiff's counsel was also the attorney of record in the *Grabow* and *Rooney* cases. In those case, as evidenced by the court orders, which are public record, Plaintiff's counsel argued that MDP's use of Medicare rates was unreasonable. As set forth in Magistrate Judge Varholak's order in the *Rooney* case, "[a]ccording to Plaintiff, Medicare reimbursement rates are both inadmissible at trial and irrelevant in determining the amount of medical expenses…" (*See*, pg. 6, *Rooney* order, **Exhibit A**). Not only was MDP's use of 200% of the Medicare rate disclosed in this case, it is also an issue that Plaintiff's counsel has litigated in other cases involving Allstate.

Even though Plaintiff premises his primary argument on an alleged ignorance about how MDP calculates its amounts, he nonetheless contends it is unreasonable for MDP to rely on collateral source payments, including Medicare rates. These facts bely Plaintiff's (and his counsel's) actual knowledge of the workings of MDP and their claimed ignorance in this case is untrue and misleading. Unfortunately, this is not the first time Plaintiff's counsel has attempted to mislead a court. (*See also*, pg. 18, Magistrate Judge Neureiter's order in *Cribari v. Allstate*, **Exhibit F**).

2. <u>MDP is one of many factors Allstate adjusters may use to evaluate UIM claims.</u>

Plaintiff over-simplifies Allstate's use of MDP and ignores the fact that it is a computer program, which is available to adjusters, as <u>part</u> of their evaluation. It assists in evaluating

frequency and duration of treatment, necessity of treatment and a cost assessment of treatment. (*See*, Thomas Expert Report from *Cheung*,[3] pg. 1, **Exhibit H**; and Lonker Decl., ¶ 8, **Exhibit I**).

Significantly, the amounts generated by MDP are subject to overrides and adjustments by the claims adjuster in each case. (*Id.* ¶ 9.) In addition to the reimbursement rate based on 200% of Medicare reimbursements, MDP provides other information for the Allstate adjuster's consideration, including expected recovery dates for injuries. (*Id.* ¶ 8.) If an Allstate adjuster makes a determination that differs from the MDP data, the adjuster can reject and override the MDP recommended number. (*Id.* ¶¶ 9-10.)

Moreover, MDP is *not* the only factor an adjuster relies upon in making his or her determination as to the reasonableness of a medical bill. Although Allstate adjusters use MDP to assist them in evaluating claims, it is a guide or tool for adjusters, among many tools adjusters use. (*Id.* ¶ 6.) In light of the complexity and opaqueness inherent in the setting of medical charges for a given service or supply, Allstate uses a variety of factors to evaluate the reasonable and customary value for medical services,, including: (1) the claims adjuster's experience, training, and judgment; (2) the hospital or medical bills and the charges contained therein; (3) the medical records contained in the file; (4) analysis from MDP; (5) information provided by the insured or his or her counsel; and (6) reports from another software program called Colossus. (*Id.* ¶ 4.)

---

[3] *Cheung* is another Allstate case which involved also involved Plaintiff's counsel.

3.  <u>MDP is not a collateral source and does not use any collateral source specific to Plaintiff.</u>

The collateral source rule provides that "compensation or indemnity received *by an injured party* from a collateral source, wholly independent of the wrongdoer and to which the wrongdoer had not contributed, will not diminish the damages recoverable from the wrongdoer." *Forfar v. Wal-Mart Stores, Inc.*, 436 P.3d 580, 583 (Colo.App. 2018) (*internal citations omitted*)(*italics added*). Pursuant to C.R.S. § 10-1-135(10)(a), "any collateral source payment or benefits" is inadmissible at trial "in any action against an alleged third-party tortfeasor." The purpose is to make the injured party whole and to prevent a tortfeasor from benefiting as a result of compensation that the injured party may receive from a third-party source. *Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo. 2010) (*internal citations omitted*). Amounts paid are inadmissible at trial because of the "unjustifiable risk that the jury will infer the existence of a collateral source…and thereby improperly diminish the plaintiff's damages award." *Wal-Mart Stores v. Crossgrove*, 276 P.3d 562, 567 (Colo. 2012).

Here, neither MDP nor the database it relies upon is a collateral source because the collateral source statute applies to evidence of a specific payment by a third party to the plaintiff. In each of the cases cited by Plaintiff, the courts were concerned with evidence of a specific payment that related specifically to the plaintiff in that case and admissibility:

- In *Crossgrove*, the court held that "[e]vidence of the $40,000 paid by [Plaintiff's] insurance provider is inadmissible" under the pre-verdict evidentiary collateral source rule because it is evidence of a collateral source benefit. *Crossgrove*, 2012 CO 31, ¶ 25.

- In *Gardenswartz*, the Colorado Supreme Court held that the collateral source rule prohibits the plaintiff's health insurance benefits from being deducted from his award against the tortfeasor. *Gardenswartz*, 242 P.3d at 1088.

-11-

- In *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649 (Colo. 2012) the Colorado Supreme Court held that the trial court erred by admitting evidence of the amount paid by the insurer to satisfy the plaintiff's medical bills because the amount paid was evidence of a collateral source benefit. *Sunahara*, 2012 CO 30M, ¶¶ 14-16.

- In *Forfar*, the court held that the amount of Medicare benefits received by the plaintiff were inadmissible under both the pre-verdict evidentiary component and post-verdict component of the Colorado collateral source statute. *Forfar v. Wal-Mart Stores, Inc.*, 2018 COA 125.

None of these cases prohibit incorporating a computer tool like MDP in determining reasonable and customary amounts of medical bills in the adjusting process. Further, none of these cases addressed whether a bill evaluation program can be used by an insurer, nor do these cases state or limit what an insurer must consider pre-litigation. Rather, in each of these cases, the courts were concerned with collateral sources that related *specifically* to payments to the plaintiff and to the issue of admissibility of such *specific* payments.

Contrary to Plaintiff's assertion, the reimbursement rate provided by MDP is not based on a collateral source and takes into consideration a number of factors. In part, MDP references a government database of Medicare reimbursement rates, maintained by the Centers for Medicare & Medicaid Services ("CMS"), to determine the reimbursement rates specific to a specific facility or region. Medicare reimbursement rates are based on a labor-intensive process of assigning a payment amount for each type of physician fee service. (*See, e.g.*, Sally Coberly, *The Basics: Relative Value Units*, National Health Policy Forum (Jan. 12, 2015), **Exhibit J**). Medicare reimbursement rates are adjusted to account for geographic differences in costs and other factors before the payment is made to a particular provider. (*Id.*) Medicare rates are based

on paying full cost and no profit. (*Id.*) The rates are approved by Congress, and the procedures are priced by medical professionals in the industry. (*Id.*)

Thus, the reimbursement rate referenced in the MDP database is based on rates independently set by CMS and are based on the cost of the service to the hospital or medical provider. (*See, e.g.*, *id.*) Then MDP builds in a 100% profit amount because the rates it recommends are 200% of the Medicare reimbursement rate as compared to the approved medical provider or hospital Medicare reimbursement rate. Indeed, 200% of the Medicare reimbursement rate has been recognized as a legally valid and reasonable measure for evaluating medical bills. In Florida, paying 200% of Medicare "satisf[ies] the PIP statute's reasonable medical expenses coverage mandate." *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 976 (Fla. 2017) (citing to statute setting PIP medical reimbursement rates at 200% of Medicare).

Moreover, the amounts generated in MDP are based on the reimbursement rates accepted by that specific facility or provider which, in turn, is based on the reimbursement amount for a given procedure within a specific geographic area,  not generic rates across the country. (See, ¶ 7, Lonker Decl., **Exhibit I**). For example, with respect to hospitals, MDP utilizes the national provider identification number to determine the fee schedule for that particular hospital, so the number generated by MDP is individualized in each case and specific to the hospital medical bill in each case. (*Id.*; pg. 3, Thomas Expert Report, **Exhibit H**.) MDP then uses the Medicare reimbursement amount that specific hospital normally accepts and multiples it by 200%. (*See*, ¶ 7, Lonker Decl., **Exhibit I**). Stated differently, Allstate's starting point in its investigation into the reasonableness of a given service or supply is to allow for a profit rate of 100% to the provider. Plaintiff asks this Court to decide as a matter of law this is unreasonable.

The policy and purpose underlying the collateral source rule are not implicated here. (*See, e.g.*, pgs. 9-11, Thomas Expert Report from *Cheung*, pp. 9-11, **Exhibit H**). Plaintiff seeks a ruling that would bar an insurer from presenting evidence on a computer tool it used to assist it in determining the reasonable and customary charges for medical bills. Such a result would place the insurance industry in the untenable position of being barred from explaining how they reached their claims adjusting decisions. Such a result could then result in a finding the insurer unreasonably denied or delayed payment, which is precisely the result Plaintiff seeks.

As noted, the collateral source rule excludes trial evidence about a collateral source benefit the *plaintiff* has received because a fact-finder could improperly reduce a plaintiff's damages award. This concern is not present here because  none of Plaintiff's medical care was covered by Medicare.

Further, the Colorado Supreme Court's concern regarding a plaintiff's damages award being reduced because the plaintiff received money from another source is not present here. There is no risk that a jury will reduce Plaintiff's award, if any, if it hears evidence that Allstate uses a computer tool, based in part on 200% of Medicare, to determine the reasonable value of medical bills. To find otherwise would carry disastrous consequences for the insurance industry and Colorado consumers. (*See*, pg. 7, 9 Thomas Expert Report from *Cheung*, **Ex. H**). Any concern that the jury will be confused can be easily fixed with a curative jury instruction.

**B.** **A Number of Factors Were Used in this Case to Evaluate Plaintiff's Claim for UIM Benefits and to Determine the Reasonableness of Submitted Bills.**

1. The applicable insurance policy permits Allstate to negotiate bills submitted for reimbursement, not just accept the billed amount.

Although Plaintiff quoted to portions of the insurance policy, Plaintiff ignores the key policy language permitting Allstate to negotiate medical bills submitted for reimbursement. Plaintiff's policy provides that Allstate "will pay damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury sustained by an insured person." (*See*, pg. 11, [Doc. No. 84]). The policy also provides that "*[t]he right to benefits and the amount payable will be decided by agreement between the insured person and us. If the insured person and we do not agree, then the disagreement will be resolved by a court of competent jurisdiction*." (*See,* pg. 17, insurance policy, **Exhibit K**). Thus, the policy contemplates that the insured and Allstate will attempt to negotiate the medical bills submitted. Based on the plain language of the policy, neither the insured nor the insurer dictate the amount payable on a medical bill.

2.   Allstate followed insurance industry customs and standards in this case by negotiating Plaintiff's medical bills.

Plaintiff's motion also ignores the realities of medical bill reimbursement in the UIM context and the insurance industry standard of negotiating medical bills. Healthcare costs have skyrocketed in recent years, resulting in a substantial increase in the amounts hospitals and providers ask to be paid. (*See*, pg. 5-6, Selden Expert Report from *Cheung*, **Exhibit H**). Further, there is substantial variation in billed amounts across hospitals within markets and across markets. (*Id.*, at 7-8.) "As the health care finance data shows, the amounts charged for medical services by 2015 were 3.91 times higher [nearly 400% of Medicare] than the costs of those services nationally, and 4.49 times higher [nearly 450% of Medicare] than costs in Colorado." (*See*, pg. 10, Thomas Expert Report from *Cheung*, **Exhibit H**; *see also* pg. 5, Selden Expert

Report from *Cheung*, **Exhibit L**). Indeed, "[b]ecause there are no meaningful market checks on the amounts being charged by medical providers, there is every reason to believe this trend will continue and perhaps even accelerate." (*See*, pg. 10, Thomas Expert Report from *Cheung*, **Exhibit H**).

Despite the variation in amounts billed, a UIM insurer owes for "reasonable medical expenses, not whatever is billed." (*See* ¶ 3, Sands Decl., **Exhibit M**); *See also*, *Kendall v. Hargrave,* 142 Colo. 120, 349 P.2d 993 (1960). In fact, what an insured is "'legally entitled to recover from the owner or operator of an uninsured auto…' is constrained by the reasonableness standard." (*See*, pg. 3, Jon Sands rebuttal expert report, **Exhibit N**). Furthermore, "it is industry standard that the concept of 'reasonableness' is related to what is customary in the market. It was not inappropriate for Allstate to consider the reasonableness of the charges…" (*Id.*) Thus, it is well within industry standards for an insurer to look at the reasonableness of charges to determine the reasonable and customary amount before paying a medical bill that is submitted for reimbursement. However, determining what is a reasonable and customary amount to pay for a patient's health care is a challenging task. (*See*, pg. 2, Selden Expert Report from *Cheung*, **Exhibit L**). There is no objective, external standard to measure how much health care services cost, and there is "no simple formula connecting costs to billed amounts." (*Id.*) In fact, billed amounts have risen far faster than costs or payments, and billed amounts can vary greatly among providers even after accounting for differences in costs. (*Id.*, at 3).

In this case, Allstate's expert opined that Allstate's evaluation of this case was consistent with industry standards in its evaluation process. Plaintiff has failed to cite to any legal authority

or evidence showing that it is against industry standard to utilize computer programs to assist with the evaluation of a UIM claim, nor should they be permitted do so in any Reply.

    3.   <u>The Allstate Adjuster did not rely exclusively on MDP in this case.</u>

Ms. Dominski used a variety of factors to evaluate Plaintiff's UIM claim. She testified that she used MDP as part of her evaluation but did not exclusively rely on it in her evaluation of the medical bills. Specifically, MDP allowed $19,679 of the billed medical treatment and, for her evaluation, Ms. Dominski increased this to $25,167. She further explained that she is able to make adjustments in MDP and can override the amount that MDP recommends. (*See*, response to undisputed fact no. 10). Contrary to Plaintiff's argument, Allstate did not exclusively rely on MDP during the evaluation of the UIM claim.

**C.  <u>Colorado Law Does Not Require that an Insurer's Investigative Process be Bound by Rules of Evidence; Rather, the Statute Calls for Consideration of "All Available Information."</u>**

Plaintiff has cited various cases that nowhere hold insurers must adhere to evidentiary rules during claims adjustment. Rules of evidence simply do not apply to an insurer's investigation of a UIM claim.

The Unfair Claim Settlement Practices Act ("UCSPA"), C.R.S. § 10-3-1104(1)(h), regulates the conduct of the insurance industry. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004).[4] The UCSPA does not prohibit using 200% of Medicare as one tool, among many, in the process of adjusting claims. *See, e.g.*, C.R.S. § 10–3–1104(1)(h). The UCSPA does not limit an insurer to consideration of only evidence that is admissible for trial purposes. Indeed,

---

[4] Plaintiff misrepresents this statute by failing to include the critical *mens rea* element of the statute in his Motion, to wit, that violation of C.R.S. § 10-3-1104(1)(h) must be "willful…or with such frequency as to indicate a tendency to engage in a general business practice…" *See also*, Exhibit F (where Court notes "disappointment in Plaintiff's counsel for making such a significant misrepresentation of the holding of a case.")

under the UCSPA, an insurer must conduct a reasonable and prompt investigation "*based on all available information.*" *Id.* (emphasis added).[5] Thus, the UCSPA requires insurers to consider information that may otherwise be inadmissible in a court of law. Investigations conducted by claims adjusters are not bound by rules of evidence. (*See*, pg. 11, Thomas Expert Report from *Cheung*, **Exhibit H**).

Indeed, "[m]any inadmissible documents are gathered and reviewed during insurers' customary investigations." (*Id.*) These documents include, but are not limited to: (1) police reports, (2) witness statements by the insured; (3) witness statements by third-parties; (4) jury verdict reports to determine pain and suffering and other noneconomic damages; (5) pictures of automobile accidents; (6) whether the tortfeasor accepted liability; (7) lay opinions; (8) statements of insureds' counsel; and (9) what the tortfeasor's insurance did in adjusting the claim, including whether it agreed to settle the claim. Even parties to litigation are not limited to discovery of only admissible evidence but can seek discovery of any information relevant to the parties' claim or defenses. Consideration of such information, including the use of MDP, is consistent with the goals of the UCSPA, including the goals of efficiency and the prompt evaluation of claims. (*Id.*, p. 12.)

If admissibility at trial against the tortfeasor were the test of what insurers can consider when adjusting a claim, then an insurer would not be able to consider much of the customary information it typically considers in adjusting a claim, including the hearsay lay opinions of Plaintiff's counsel. (*Id.*, p. 11.) This would be akin to the police only being able to consider

---

[5] Ironically, Plaintiff's motion argues to the contrary—contending that Allstate should **not** consider information available to it—i.e., Medicare reimbursement rates.

evidence based upon what would be admissible at trial when conducting an investigation. Such a result would lead to an absurd outcome. Indeed, an insurer could violate the UCSPA if it did not consider all available information when adjusting a claim (at least that which might only tend to increase the value of a claim). C.R.S. § 10–3–1104(1)(h)(III).

The recent Colorado Supreme Court decision, *Munoz v. Am. Family Mut. Ins. Co.*, is instructive because it held that an insurer need not apply a rule of litigation in the claim adjusting process. *See* 2018 CO 68, ¶ 4-5. In *Munoz*, the insured filed suit against the insurer, and each party filed cross-motions for a determination of law regarding whether prejudgment interest must be paid as part of an insured's settlement of a pre-litigation uninsured motorist demand. The Colorado Court of Appeals affirmed the trial court's determination that an insured may recover prejudgment interest on UIM benefits only when a judgment has entered and interest is awarded as a component of damages assessed under the jury's verdict or by the court. *Id.*¶¶ 6-7. The Supreme Court affirmed, noting that the following conditions must be met before prejudgment interest applies: "(1) an action must be brought; (2) the plaintiff must claim damages and interest in the complaint; (3) there must be a finding of damages by a jury or the court; and (4) judgment must be entered." *Id.* ¶ 11. Because none of these conditions were met, the insurer was not required to consider prejudgment interest in pre-litigation negotiations. *Id.* ¶¶ 12-14. Similarly, here, an insurer should not be required to apply the rules of evidence when making claims adjustment decisions. The collateral source rule does not hold otherwise. *See* C.R.S. § 13-21-111.6.

**D.** **The Evidence Shows that Allstate's Evaluation Was Reasonable and any Dispute regarding this Is a Question of Fact for the Jury.**

Aside from Plaintiff's quarrels with MDP, Plaintiff also believes that summary judgment is warranted due to how the claim was investigated and evaluated. In essence, Plaintiff seeks an order from the Court determining what is or is not reasonable. However, under Colorado law, "[w]hat constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012).

Allstate's initial liability determination had no effect on Plaintiff's UIM claim. After initially denying liability, Allstate accepted liability on September 11, 2015. (*See*, response undisputed fact number 6). This did not affect Plaintiff because he was still seeking medical care and did not provide Allstate with his medical records and bills until June 30, 2016. (*See*, undisputed fact number 8). Until this date, Plaintiff's counsel repeatedly told Allstate that Plaintiff was still treating and that records would be provided at a later date. The initial liability denial had no impact on the submission of Plaintiff's claim or the attempts to resolve it. (*See*, pgs. 1-3, Jon Sands' expert report, **Exhibit N**).

It is also a question of fact as to whether Ms. Dominski's evaluation was reasonable. The responses to the undisputed facts show that she considered all of the medical records and utilized tools such as MDP and Colossus to assist her. In evaluating the claim she also utilized amounts that were higher than what was recommended by MDP and Colossus. In regard to the medical bills, MDP allowed $19,679 and Ms. Dominksi allowed $25,167 for her evaluation. (*See*, pg. 120, ln. 13-21, **Exhibit C**). For the general damages and recommended settlement amount she evaluated the claim higher than what Colossus recommended. Colossus recommended zero and

-20-

she evaluated it up to $15,000. (*See*, pg. 112, ln. 16-22, **Exhibit C**). The facts show that her overall evaluation was reasonable and supported by the medical records. If there is any question as to whether the evaluation was unreasonable, it should be left for the jury to determine.

      WHEREFORE, Allstate respectfully requests that Plaintiff's motion be denied.

DATED:  September 9, 2019

                    Respectfully submitted,

                    By:  *s/ Justin H. Zouski*
                        Kurt H. Henkel
                        Justin H. Zouski
                        TUCKER HOLMES, P.C.
                        Quebec Centre II, Suite 300
                        7400 East Caley Avenue
                        Centennial, CO  80111-6714
                        Phone:  (303) 694-9300
                        Fax:  (303) 694-9370
                        E-mail: khh@tucker-holmes.com
                                jhz@tucker-holmes.com
                        *Attorneys for Defendant Allstate*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 9, 2019, I electronically filed the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Marc R. Levy, Esq.
Heather E. Hackett, Esq.
Levy Law
6465 S. Greenwood Plaza Blvd., Ste. 650
Englewood, CO  80111
mlevy@levytrial.com
hhackett@levytrial.com
*Attorney for Plaintiff*

*The duly signed original held in the file located at Tucker Holmes, P.C.*

*/s/ Cheryll A. Paull*
Cheryll A. Paull, Legal Assistant