IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 17–cv–00866–KMT

AUSTIN BENSON,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

---

# ORDER

---

This matter is before the court on Defendant's "Motion for Summary Judgment." (["Motion"], Doc. No. 86.) Plaintiff has responded in opposition to the Motion, and Defendant has replied. (["Response"], Doc. No. 89; ["Reply"], Doc. No. 94.)

On April 2, 2015, Plaintiff Austin Benson was involved in a single-vehicle car accident. (Doc. No. 13 at 4-7 ["Undisputed Facts"], at 5 ¶ 1.) As a result of the accident, Plaintiff reportedly suffered various injuries. (["Complaint"], Doc. No. 4 at 2 ¶ 9.) After settling the liability portion of his claim against the at-fault party for the maximum limits of that individual's insurance policy, Plaintiff filed this lawsuit, on March 9, 2017, against his own automobile insurance provider, Defendant Allstate Fire and Casualty Insurance Company ["Allstate"], to recover underinsured motorist ["UIM"] benefits.[1] (Undisputed Facts 5 ¶¶ 2-4; *see* Compl. 3-8 ¶¶ 11-67.) In his Complaint, Plaintiff asserts the following causes of action: (1) unreasonable delay

---

[1] This lawsuit was initially filed in Colorado state court. (Doc. No. 1 at 1 ¶ 1, Ex. A.) The case was then removed, on April 7, 2017, on the basis of diversity jurisdiction. (*Id.* at 4 ¶ 18.)

and denial of UIM benefits, pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116; (2) declaratory judgment regarding entitlement to UIM benefits; and (3) bad faith breach of an insurance contract. (Compl. 3-8 ¶¶ 11-67.)

As part of his original UIM claim, Plaintiff sought compensation for lost wages, in the amount of $16,800.00, which he claimed to have incurred as a result of the car accident.[2] (Undisputed Facts 5; Mot. Ex. B at 10.) On June 4, 2018, Defendant received permission to amend its Answer in this lawsuit, to add an affirmative defense for insurance fraud relating to Plaintiff's wage loss claim. (Doc. Nos. 23, 33.) Specifically, Defendant alleges that Plaintiff made material misrepresentations with respect to his lost wages, as well as the reasons for the termination of his employment prior to the accident. (Doc. No. 23 at 3.) Defendant contends that those misrepresentations were sufficient to trigger the fraud clause of Plaintiff's insurance policy, voiding his coverage thereunder. (*Id.* at 5.) Defendant now moves for summary judgment, in its favor, based on that affirmative defense. (Mot. 8-17.)

**STANDARD OF REVIEW**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The

---

[2] Plaintiff withdrew his wage loss claim via responses to interrogatories, which were served after the commencement of this lawsuit. (Mot. 2, Ex. G at 78:21-24.)

2

nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require

3

the court to make unreasonable inferences in favor of the non-moving party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

In its Motion, Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims, because Plaintiff violated his insurance policy's fraud clause. (Mot. 17.) Defendant contends, specifically, that Plaintiff "knowingly and intentionally made material misrepresentations as to whether he quit or was terminated from his job prior to the accident and his ability or inability to work." (*Id.*) Defendant is adamant that, pursuant to the terms of the insurance policy, Plaintiff's "egregious fraudulent conduct voids coverage of the entire UIM claim." (*Id.* at 3.)

The insurance policy at issue here contains the following clause: "We may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident of loss for which coverage is sought under this policy." (Mot. Ex. I at 7.)

Such fraud clauses have been found to be enforceable by both Colorado and Tenth Circuit courts. *See, e.g., Am. Diver's Supply & Mfg. Corp. v. Boltz*, 482 F.2d 795, 797–98 (10th Cir. 1973); *Martinez v. Hartford Underwriters Ins. Co.*, No. 12-cv-02405-MJW, 2014 WL 2016569, at *2 (D. Colo. May 15, 2014); *Nw. Nat'l Ins. Co. v. Barnhart*, 713 P.2d 1360, 1361-62 (Colo. App. 1985). And, importantly, violation of a fraud clause voids the entire claim, not just the portion to which the fraud pertains. *See Am. Diver's*, 482 F.2d at 797 ("[T]he fraud clause

intentionally imposes different standards of responsibility and damages—absolute honesty and forfeiture of *all* benefits of the policy and not merely unintended benefits[.]") (emphasis in original).

To establish fraud arising from the violation of a fraud clause, an insurer must prove three elements: (1) that the insured misrepresented or omitted some fact; (2) that the misrepresentation or omission was "material;" and (3) that there was "intent to deceive on the part of the insured." *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, No. 16-CV-2946-WJM-NYW, 2018 WL 2196089, at *3 (D. Colo. May 14, 2018) (quoting *Martinez*, 2014 WL 2016569, at *2); *see Am. Diver's*, 482 F.2d at 797. Here, Defendant argues that Plaintiff made material, intentional misrepresentations with respect to two issues: (1) the nature of his separation from the job he held prior to the car accident; and (2) his ability to work during the 210 days for which he claimed lost wages. (Mot. 3.)

### A.     *Plaintiff's Statements Concerning his Prior Employment*

Defendant argues, first, that Plaintiff made certain misrepresentations as to whether he had quit, or been fired from, his previous job. (*Id.* at 3, 11.) In support of that contention, Defendant has produced evidence to show that, while pursuing his UIM claim, Plaintiff told Allstate that he had quit his job, even though he had previously told the Colorado Department of Labor that he had been terminated from the position. (Mot. Ex. H at 49:23-50:25; Doc. No. 70 at 42:9-17.)

Plaintiff, for his part, does not appear to dispute that he supplied Defendant and the Colorado Department of Labor with contradictory positions regarding the nature of his employment separation. (*See* Resp. 2-3.) Rather, Plaintiff argues that his representation to

Defendant, that he "quit" his job, was not a misrepresentation, because it "ha[s] never changed and w[as] truthful." (*Id.*) Plaintiff contends further that, even if the statement was a misrepresentation, it was not material to his UIM claim. (*Id.* at 8.) Finally, Plaintiff argues that Defendant "ignores competent evidence that any issues were created by mistake, not intentional representation." (*Id.* at 2.)

There is no question that, at the time of the car accident, Plaintiff was unemployed. (Mot. Ex. G at 66:23-25, 67:24-68:1.) And, it is undisputed that Plaintiff told Allstate that he had quit his job right before the car accident.[3] (Mot. Ex. B at 2.) The parties dispute, therefore, is limited to whether Plaintiff's representation that he "quit" his job is a misrepresentation; whether the statement was material, even if it was a misrepresentation; and whether Plaintiff had any intent to deceive anyone by making the statement.

The record shows that, within a few weeks of the car accident, Plaintiff retained Scott Landry to represent him in all legal matters arising from the incident. (Mot. 6 ¶ 21, Ex. H at 8:25-9:12.) At Mr. Landry's suggestion, Plaintiff also applied for unemployment benefits with the Colorado Department of Labor, during the same period that he was pressing forward on his insurance claim. (*Id.* at 6 ¶ 20; *see* Doc. No. 26-2 at ¶ 4.) After his application for benefits was denied by the Colorado Department of Labor, Plaintiff appealed the decision, and was represented in the appeal by Mr. Landry. (Mot. 6 ¶ 22, Ex. H at 8:4-18.) The issue on appeal was limited to whether Plaintiff quit his job (voluntary resignation), or whether he was fired (involuntary termination). (*Id.* at 6 ¶ 24, Ex. H at 8:8-18.) At the hearing for unemployment benefits, Plaintiff's former employer took the position that Plaintiff quit his job, however, Mr.

---

[3] There was never a representation that Plaintiff's employment was discontinued, as a result of the car accident.

Landry argued, on Plaintiff's behalf, that Plaintiff had been fired. (Mot. 7 ¶ 27; Doc. No. 70 at 42:9-17.)

In the employment context, circumstances may exist, where an individual has resigned from his employment, but legally, is still considered to have been involuntarily terminated. *See, e.g., Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)) (explaining that "[t]he constructive-discharge doctrine contemplates a situation in which an employer [creates such intolerable working conditions] . . . that a reasonable person . . . would have felt compelled to resign," and that "Title VII treats that resignation as tantamount to an actual discharge"). In such circumstances, an individual can truthfully state to the world at large that he has resigned from his job; but nevertheless, for other purposes, the law will consider that same individual to have been fired from that same job. Thus, simply using the term "quit" in one context, while using the term "fired" in another context, does not necessarily render either statement to be a lie.

At his deposition, Plaintiff provided the following testimony, when asked why he had stopped working one week prior to the car accident:

> I didn't stop. My general manager let me go because she said that I resigned, but I called them and let them know I was going to be late. When I got there, they said that I had voluntarily quit pretty much because I wasn't there when I was supposed to be; something like that. I can't remember the specifics.

(Mot. Ex. G at 68:4-9.) Mr. Landry, at his own deposition, testified that it was his understanding, that in the initial unemployment benefits proceeding, the hearing officer "had made a determination that [Plaintiff] was not eligible for unemployment benefits because it agreed with his former employer's position that he voluntarily terminated as opposed to being involuntarily terminated." (Mot. Ex. H at 51:12-17.) The appellate court, however, ultimately

reversed the lower court, and found that Plaintiff had, in fact, been involuntarily terminated, thereby entitling him to unemployment benefits. (*See* Mot. 5 ¶ 16, Ex. F.)[4]

On this record, then, the extent to which Plaintiff's statements regarding his separation from employment shortly before the car accident constitute misstatements, thereby qualifying as fraud under the fraud clause of the insurance policy, presents a genuine disputed issue of material fact that precludes summary judgment. Further, whether such statements were material, and whether such statements were made by Plaintiff with an intent to deceive either Allstate, or the Colorado Department of Labor, also present genuine disputed issues of material fact, including the quintessential jury responsibility to determine the credibility of witnesses. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.") Therefore, summary judgment is inappropriate on this issue.

### B. *Plaintiff's Statements Concerning his Ability to Work*

Defendant also argues that Plaintiff made misstatements regarding his ability to work in the aftermath of the car accident, during the period for which he claimed lost wage damages. (Mot. 11.) In making that argument, Defendant points to evidence that Plaintiff told Allstate that he was physically unable to work from the date of the accident, April 2, 2015, until January 2016, thereby accruing $16,800.00 in lost wages. (Mot. 4-5 ¶¶ 8, 12, Ex. B at 10, Ex. E at 3.)

---

[4] This Undisputed Fact is partially disputed, in that some of the unemployment benefits which Plaintiff received were ultimately repaid. However, it is undisputed that Plaintiff's tax returns do show that he received unemployment benefits in 2015. (*See* Mot. Ex. F.)

Defendant contends that, upon his initial application for unemployment benefits, Plaintiff "was required to show that he was able to and available for work." (Mot. 11.)

Plaintiff, in response, has produced his own deposition testimony to show that he did not work, at all, during the time period at issue. (Resp. Ex. 1 at 72:20-74:9.) At his deposition, Plaintiff also testified that he was unable to meet the physical labor requirements of at least one job, due to his injuries from the car accident. (*Id.*)

Here, the record shows that Plaintiff consistently represented to Defendant that he was unable to work for a certain time period after the car accident, due to his injuries. In a June 30, 2016 demand letter, Plaintiff's attorney, Mr. Landry, informed Allstate that, prior to the car accident, Plaintiff "was looking forward to obtaining another job when he returned to Colorado," but that because of his injuries, Plaintiff "was not able to work for approximately one year after the accident." (Mot. Ex. B at 2.) In that letter, Mr. Landry made clear that Plaintiff "missed approximately 210 days of work due to his injuries." (*Id*. at 10.) Mr. Landry emphasized that Plaintiff "was unable to work for almost an entire year, and now only does so under duress." (*Id*. at 11.) By letter dated October 3, 2016, in which he contested Defendant's initial evaluation of the UIM claim, Mr. Landry wrote, in relevant part: "[Plaintiff] was unable to work from April 2, 2015 to January 2016. We provided written confirmation that his hourly wage prior to the accident was $10.00 per hour and you are aware that he missed approximately 210 days of work due to his injuries." (Mot. Ex. E at 3.)

The uncontroverted evidence before the court shows that Plaintiff did not work at any paid employment position in the immediate aftermath of the car accident, and that this period of unemployment overlapped, at least in part, with a period during which Plaintiff received

unemployment benefits.  (*See* Mot. Ex. F.)  Importantly, Defendant has not presented any evidence to show that Plaintiff did, in fact, tell the Colorado Department of Labor that he was physically able to perform any and all work.  Nor has Defendant produced evidence to show that Plaintiff could, in fact, work.

To prove that Plaintiff misstated his ability to work, Defendant cites the Colorado unemployment statute, C.R.S. § 8-73-107, which provides, in relevant part, that: "Any unemployed individual shall be eligible to receive benefits with respect to any week *only if the division finds* that . . . [t]he individual is able to work and is available for all work *deemed suitable*[.]"  C.R.S. § 8-73-107(1)(c)(I) (emphasis added).  The statute requires a finding by the Colorado Department of Labor, and it does not imply that a claimant made a statement regarding his ability to work at any and all jobs.  In this case, there is no evidence that Plaintiff registered for work at an unemployment office or, if he did, what the contents of such a registration contained.  *See Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1199 (10th Cir. 2000) (stating that a court is "not obligated to comb the record in order to make [a party's] arguments for him").

It is also worth noting that knowledge of the Colorado unemployment statute cannot necessarily be imputed to Plaintiff, simply because he employed a lawyer for one phase of the proceedings.  Indeed, the record shows that Mr. Landry did not assist Plaintiff with the original paperwork to initiate his claim for unemployment benefits.  (Mot. Ex. H at 8:8-12, 16:8-16.)  At his deposition, Mr. Landry testified that he told Plaintiff that he "didn't see that it was any problem, that he should go ahead and apply [for unemployment benefits]."  (*Id.* at 12:14-13:5.)  Mr. Landry also testified that he does not, and has never, believed that "one of the requirements

for submitting an application for unemployment benefits [is] that at the time you submit that application you are . . . physically and mentally capable of working." (*Id.* at 19:3-8.)

It is true that "[a]n attorney is presumed to know the law, and an attorney's knowledge is imputed to the client if it relates to the proceedings for which the attorney has been employed." *Murry v. GuideOne Specialty Mutual Ins. Co.*, 194 P.3d 489, 494 (Colo. App. 2008). However, the record here does not show that Mr. Landry represented Plaintiff in his application for unemployment benefits. And, there is no evidence presented which would allow the court or the jury to infer that Plaintiff, himself, would have read and understood the Colorado Revised Statute with respect to unemployment benefits.

Therefore, it is again uncertain whether Plaintiff made any misstatement with respect to his ability to perform work during the time period at issue. But, even if such a misstatement could be shown, summary judgment would still not be appropriate. Specifically, the materiality of a misrepresentation is a mixed question of law and fact, that under most circumstances, should be determined by the trier of fact. *See Turley v. State Farm Mut. Auto. Ins. Co.,* 944 F.2d 669, 672 (10th Cir.1991); *Long v. Ins. Co. of N. Am.,* 670 F.2d 930, 934 (10th Cir.1982). Also, intent to deceive on the part of the insured may only be implied if the misrepresentations or omissions were made knowingly and deliberately. *See Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998). For that determination, credibility of the witnesses, including Plaintiff, will be a key component.

Whether a party has committed fraud that is sufficient to void his insurance policy is almost always a question of fact for the jury to determine, and not a question of law. *See Varady v. White*, 595 P.2d 272, 273 (Colo. App. 1979); *see also Dozier v. Twin Peak Ranch, Inc.*, 424

P.2d 368, 368 (Colo. 1967). The issues here, including whether a misrepresentation was made, whether the misrepresentation, if made, was material, and whether Plaintiff knowingly and deliberately made such a misrepresentation with the intent to mislead or deceive, are all issues involving disputed facts and the inferences therefrom. Therefore, summary judgment on Defendant's affirmative defense of insurance fraud is inappropriate.

It is therefore

**ORDERED** that Defendant's "Motion for Summary Judgment" (Doc. No. 86) is **DENIED**.

Dated January 15, 2020.

BY THE COURT:

_Kathleen M. Tafoya_
Kathleen M. Tafoya
United States Magistrate Judge